**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GeriAnn Turner,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-23-01114-PHX-MTL<br><br>**ORDER** |

At issue is the denial by the Social Security Administration of Plaintiff GeriAnn Turner's application for Title II disability insurance benefits under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 22, 26, 27) and the administrative record (Docs. 11, 12, 13, 14 "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

Plaintiff filed an application for benefits on September 10, 2020[1] (A.R. at 206-07), for a period of disability beginning on February 22, 2016 (*id.* at 13, 213-14). Plaintiff's claims were initially denied on February 26, 2021 (*id.* at 13, 103-11), and upon reconsideration on March 16, 2021 (*id.* at 113-17). Thereafter, Plaintiff filed a request for a hearing which was held before the ALJ on March 21, 2022. (*Id.* at 7-8, 160.) On May 16, 2022, the ALJ dismissed the Plaintiff's claims. (*Id.* at 10-12.) Plaintiff subsequently filed

---

[1] On page 13 of the administrative record, the ALJ appears to have erroneously stated that the Plaintiff's application for benefits was filed on September 9, 2020. (*See* A.R. at 206-07.) This incorrect date was cited and repeated in Plaintiff's opening brief. (Doc. 22 at 1.)

a request for review, which was denied on April 28, 2023. (*Id.* at 1-3.) Plaintiff now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: status post cervical discectomy fusion of C6-C7; status post left L5-S1 microdiscectomy; intervertebral disc degeneration, lumbosacral region; obesity; asthma; bilateral primary osteoarthritis of the knee; and status post left tenosynovectomy. (A.R. at 16.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[2] The ALJ found:

> [T]he claimant had the [RFC] to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except that the claimant can lift and/or carry 10 pounds occasionally and 10 pounds frequently; can stand and/or walk for a total of 2 hours in an 8-hour workday; can sit for a total of 6 hours in an 8-hour workday; push and/or pull without limit other than as shown for lift and/or carry; can never climb ladders/ropes/scaffolds; can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; can frequently reach overhead with the bilateral upper extremities; and the claimant must avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, poor ventilation, etc.

(*Id.*) Based on this RFC, the ALJ found Plaintiff could perform past relevant work as an accounting assistant, human resources assistant, finance manager, account receivable clerk, invoice specialist, and accountant. (*Id.* at 24.) Consequently, the ALJ concluded that Plaintiff was not disabled under §§ 261(i) and 223(d) of the Social Security Act. (*Id.* at 24-25.)

---

[2] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520 (a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC

and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

**III.    DISCUSSION**

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred by rejecting the opinion of Plaintiff's primary care provider, Deborah Bernard, board-certified family nurse practitioner ("NP"), without substantial evidence. (Doc. 22 at 12.) Second, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (*Id.* at 18.)

**A.    Medical Opinion Evidence**

Plaintiff argues that the ALJ's determination regarding NP Bernard's assessments of her ability to perform work-related activities was not supported by substantial evidence. (*Id.* at 12.) The Court disagrees.

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because Plaintiff filed her claim after the effective date, the revised rules apply. (A.R. at 206-07.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. § 404.1520c(a).

The revised rules require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. § 404.1520c(a)-(b). The most important factors ALJs consider are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability focuses on evidence intrinsic to the medical opinion, requiring adjudicators to look at the relevance of the objective medical evidence and explanations cited as support for the physician's

medical opinion. *Id.* § 404.1520c(c)(1). In contrast, consistency focuses on evidence extrinsic to the medical opinion, requiring adjudicators to compare consistency of the opinion to other evidence in the record. *Id.* § 404.1520c(c)(2). The ALJ can, to a lesser degree, consider other factors such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source personally examined the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Ninth Circuit held that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citations omitted).

The record reflects that NP Bernard has served as the Plaintiff's primary care provider for approximately 15 years. (A.R. at 48.) In April 2021, NP Bernard completed a checkbox-style medical assessment regarding the Plaintiff's ability to do work-related physical activities. (*Id.* at 2428-29.) NP Bernard's assessment indicates that Plaintiff is unable to sit, stand, or walk for more than two hours in a typical eight-hour workday and requires Plaintiff to alternate positions at least every 20 minutes. The decision states that Plaintiff could lift and carry less than ten pounds, would miss more than six days of work per month, and would be off task more than twenty-one percent of a workday.

The ALJ found these opinions unpersuasive:

> The undersigned finds this opinion to be unpersuasive, as the extreme limitations noted by Ms. Bernard are not supported by any accompanying examination findings. The opinion is not supported by Ms. Bernard's examination findings of record, which reflect normal findings with respect to the claimant's neurological, psychiatric, or extremity findings. In addition, the opinion is inconsistent with the record as a whole, including with the claimant's examination findings from the Arizona Pain Doctors, as noted above (e.g., Ex. 19F, 26F, 27F, and 28F).

(A.R. at 23.) The ALJ's finding that NP Bernard's medical opinion was unpersuasive is supported by substantial evidence. Although brief, the ALJ's discussion addresses both the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(c)(1)-(2).

First, the ALJ addresses supportability by finding that the "extreme limitations" in NP Bernard's assessment are not supported by any accompanying examination findings. (A.R. at 23.) Plaintiff argues that such accompanying examination findings are not required. (Doc. 22 at 14-15.) While true, "an ALJ may take into account the quality of the explanation when determining how much weight to give a medical opinion" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (cleaned up); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

In this case, NP Bernard did not provide any substantive explanation for her conclusions. She simply checked boxes when answering the questions and left blank a comments section that provided her an opportunity to explain her assessment. (A.R. at 2428-29.) To the extent that NP Bernard's opinions are supported by her treatment notes found elsewhere within the administrative record, the ALJ permissibly discounted her opinion due to inconsistencies with these examinations, which reflected "normal" neurological, psychiatric, or extremity findings. For instance, NP Bernard's assessment claimed that the Plaintiff could only use her left hand occasionally (21-33 percent of the time), but her own examination records indicate that Plaintiff had "normal" extremity findings. (*Compare* A.R. at 2428, *with* A.R. at 2417.) The Commissioner in his Response cites additional examples that prove the same point. (Doc. 26 at 15 (citing A.R. at 1001, 1025-26, 1037, 1057, 1075, 1081, 1092, 1100, 1108).) As referenced by the ALJ, similar inconsistencies between NP Bernard's assessment and examinations of record exist for the Plaintiff's neurological and psychiatric findings, including the entirety of Exhibits 17F and 19F as noted by the ALJ. (A.R. 16, 20-24, 891-92).

Plaintiff then argues, without citation to case law, that these inconsistencies are not a permissible basis for discrediting the opinion because they do not relate to Plaintiff's impairments or ability to sustain work. (Doc. 22 at 15; Doc. 27 at 4.) Neurological, psychiatric, and extremity findings, however, appear closely connected to an assessment that determines how much someone can lift and concentrate during a workday. The inference the ALJ drew from the record was not a mistaken inference, and where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017).

Therefore, the ALJ could reasonably find that the lack of accompanying examination findings is a permissible basis for discounting that doctor's opinion under the supportability factor. While opinions expressed in check-the-box questionnaires cannot be rejected solely for that reason, *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions," *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

The ALJ then further addressed the consistency factor by noting that the opinion is inconsistent with the record as a whole. (A.R. at 23.) Without more, this justification would be wholly insufficient basis for discrediting medical testimony. The ALJ, however, narrowed the scope of his conclusion by citing his prior elaboration of the Arizona Pain Doctors' examination findings and referencing several exhibits that were discussed in more detail earlier in his decision. In looking at the prior discussion, the ALJ cited a number of clinical records that demonstrate an inconsistency, including findings of normal gait and near-normal strength in extremities. (*Id.* at 763-64, 789-90, 892, 1872-74, 2348-49.) Additionally, the ALJ considered Plaintiff's testimony about her ability to perform activities of daily living that involve sustained concentration, including driving, reading, handling money, and performing some household chores (*id.* at 17, 47, 280-83), which contradict NP Bernard's assessment of concentration and cognition difficulties. (*Id.* at 2428.)

Plaintiff argues that, by pointing to entire exhibits, these citations are too general to sufficiently demonstrate inconsistency. A reviewing court, however, must look to "*all* the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (affirming the ALJ's decision and finding that a prior discussion sufficiently demonstrated which of the claimant's daily activities conflicted with the reported testimony); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."). When taken as a whole, the Court finds that the ALJ sufficiently met its burden of substantial evidence and adequately connected its findings to the medical and testimonial inconsistencies.

### B.     Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting her symptom testimony without providing specific, clear, and convincing reasons. (Doc. 22 at 18.)

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Then, provided no evidence of malingering exists, the ALJ must evaluate the claimant's statements in the context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom testimony. *Thomas*, 278 F.3d at 958. Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (cleaned up), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Instead, when assessing

the claimant's credibility, the ALJ may consider "inconsistencies either in [the] claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains." *Thomas*, 278 F.3d at 958-59 (cleaned up). Should the district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, in evaluating Plaintiff's testimony, the ALJ appropriately followed the prescribed two-step analysis. At step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (A.R. at 19.) At step two, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 20.)

The ALJ's reasoning for discrediting Plaintiff's symptom testimony is readily discernable and supported by the record. First, the ALJ summarized the Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. (*Id.* at 19.) These alleged symptoms consist of an inability to communicate effectively, difficulty in paying attention, and general pain in her feet, knees, ankles, lower back, neck, and head. (*Id.*) In sum, Plaintiff alleged diffuse symptoms which seemingly would affect her ability to concentrate, sit, and stand for extended periods of time. Despite the reported debilitating pain, the ALJ noted that Plaintiff testified to engaging in recreational travel to various destinations, including Nevada, Seattle, New Zealand, Australia, and the Caribbean. (*Id.*) Next, the ALJ noted that the objective medical evidence did not support the severity of Plaintiff's alleged symptoms. (*Id.* at 20.) Finally, the ALJ proceeded to review Plaintiff's medical history, making note of where the record demonstrated findings of reduced pain, normal memory, and normal or near-normal range of motion in the extremities, except for some persistent decreased mobility in her ankle. (A.R. at 16, 20-22; *see also id.* at 521, 760-64, 789, 892, 1237, 1283, 1319, 1366.) In addition, the ALJ found an instance in which

an MRI of Plaintiff's thoracic spine "did not show pathology that would explain [Plaintiff's reported] pain." (A.R. at 22, 2512.) Although the ALJ did not highlight the point explicitly, the conclusion is clear—the ALJ discovered consistent clinical findings that contradicted the Plaintiff's symptom testimony.

Plaintiff further argues that the ALJ's reference to an isolated instance in which the Plaintiff reported a "complete alleviation" of neck pain could not substantiate the ALJ's decision to discredit symptom testimony. (*Id.* at 790.) As Plaintiff identifies, the ALJ did refer to a post-operative visit documenting substantial relief of neck pain. (*Id.* at 20.) Whether this sole medical report is sufficient to discredit symptom testimony need not be answered because the ALJ had other sufficient reasons to do so.

The ALJ provided reasoning for discrediting the Plaintiff's symptom testimony that was supported by substantial evidence. The Court therefore will not disturb the ALJ's conclusion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (citation omitted)).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the May 16, 2022 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration (A.R. at 13-25).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 11th day of June, 2024.

Michael T. Liburdi
United States District Judge